**SAN MARCOS HOTEL CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 13543.

United States Court of Appeals
Ninth Circuit.

June 15, 1953.

507, 115 A. 783, 19 A.L.R. 797; Wigmore on Evidence (3d ed.) sections 13, 252, 452, 454.

Wm. D. Morrison, San Diego, Cal., for petitioner.

Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Louise Foster, Howard Locke, Sp. Assts. to the Atty. Gen., for respondent.

Before MATHEWS and ORR, Circuit Judges, and BYRNE, District Judge.

BYRNE, District Judge.

This appeal involves the excess profits tax liability of petitioner for the year 1944. It arises under former section 718 of the Internal Revenue Code, 26 U.S.C.A. § 718, and its determination depends upon whether the "equity invested capital" of petitioner used for purposes of computing the "credit" to which petitioner is entitled in determining its excess profits tax was properly decreased by the Commissioner pursuant to section 718(b) (1), because of "Distributions in previous years".

The petitioner is a corporation organized under the laws of the State of Arizona in 1914. Until 1933 it operated the San Marcos Hotel in Chandler, Arizona, and at present is again so engaged. From its inception until 1933 petitioner was a wholly owned subsidiary of Chandler Improvement Company. Its original assets were acquired from Chandler by the issuance of all of its $300,000 par value authorized capital stock in exchange for the hotel properties valued at $199,109.78. During the course of its operations petitioner became heavily indebted to Pacific Mutual Life Insurance Company on obligations which were endorsed by Chandler. During the same period Chandler became indebted to the petitioner in a lesser sum. In 1933 Pacific Mutual requested that petitioner's assets be transferred to the parent, Chandler, and that a new note be issued to Pacific Mutual which would be a direct obligation of Chandler. Pursuant to this request the respective boards of directors of Chandler and the petitioner held

meetings and adopted resolutions wherein it was agreed that Chandler would take over all of the assets and assume all of the liabilities of the petitioner and would issue to Pacific Mutual its note for $950,000. This was done, and on December 20, 1933, Chandler took possession of petitioner's assets and from then until May 1, 1937, received the income, paid the expenses and included the operations in its income tax computations as the owner of the properties.

Although Chandler, as sole stockholder of petitioner, caused petitioner to return to it the properties it had originally conveyed to petitioner in exchange for petitioner's stock, it did not return the stock to petitioner for cancellation. To state it another way, Chandler kept *both* the properties and the stock.

In 1937, for a stated consideration of $300,000 but an actual consideration of $285,000, Chandler sold the properties back to the petitioner. By the use of agents, nominees, options and an escrow, the parties made the negotiations appear very complicated. Unadorned by this complex technique, what occurred is relatively clear. Chandler returned to the petitioner the $300,000 par value stock it should have returned in 1933 when it took from the petitioner the consideration it had previously paid for the stock. One E. W. Edwards purchased the stock from petitioner for the sum of $75,000. The petitioner purchased the hotel properties from Chandler, paying to Chandler the $75,000 it received from Edwards and executing a mortgage note to Chandler in the amount of $210,000. The $15,000 difference between the stated consideration of $300,000 and the actual consideration of $285,000 is accounted for by the fact that Chandler paid $15,000 into the escrow and then received it back again when it received the $75,000.

The result of the 1937 transaction, with its complexities reconciled, was: Chandler received $75,000 cash and a mortgage note in the amount of $210,000 for the sale of the hotel properties to petitioner; petitioner received the hotel properties subject to a mortgage lien of $210,000 in favor of Chandler; Edwards received all of the cap-

ital stock of petitioner for which he paid $75,000.

■ To compute excess profits net income subject to the taxes imposed by section 710 of the Internal Revenue Code, 26 U.S. C.A. § 710, it is necessary to determine, among other factors, the excess profits credit allowed by that section, and that in turn, under the method used here, requires a determination of the taxpayer's invested capital which is the sum of "the equity invested capital" and "the borrowed invested capital". 26 U.S.C.A. § 717. On this appeal we are concerned only with the question whether the petitioner's "equity invested capital" has been correctly determined. So far as pertinent here "equity invested capital" is defined [1] as the sum of money and other property paid in for stock or as paid in surplus or as a contribution to capital, reduced by the amount of "Distributions made prior to such taxable year which were not out of accumulated earnings and profits".

■ On its tax return for 1944 the petitioner claimed its "equity invested capital" amounted to $375,000. This figure was arrived at by adding $300,000 allegedly paid [2] by Chandler for petitioner's stock at the time of its organization in 1914 and the $75,000 paid to petitioner for its stock by E. W. Edwards in 1937. The Commissioner allowed the $75,000 but eliminated the $300,-000. The Commissioner's ruling was approved by the Tax Court. The court found that all of the petitioner's assets were transferred to the parent Chandler in December, 1933; that these assets had a value in excess of Chandler's investment in the petitioner; that the transfer was a complete return to Chandler of its original investment; that the distribution to Chandler was "not out of accumulated earnings and profits"; that the distribution reduced petitioner's "equity invested capital" to zero and it remained at zero until the $75,000 was received in 1937.

The Tax Court's findings appear to be unassailable when we consider that substantially all the facts were stipulated to. The petitioner attempts to make a distinction between a *transfer* of assets to a shareholder and a *distribution* of assets. We do not see any significant distinction when applied to the circumstances here. The assets and liabilities were transferred to Chandler. There is no contention that the assets represented accumulated earnings and profits. To the extent that the transferred assets exceeded the transferred liabilities, it was a distribution of capital.

If the petitioner means to imply that Chandler took the assets as trustee and not as owner, the implication is not supported by the record. The assets were transferred to Chandler by warranty deed; Chandler received all of the income thereafter and did not account to the petitioner; petitioner's tax returns for 1934, 1935 and 1936 stated it was not engaged in business and had no assets or liabilities; when Chandler returned the properties to the petitioner in 1937, it did not reconvey them as a trustee but *sold* them to the petitioner for $75,000 cash and a mortgage note in the amount of $210,000.

The petitioner directs our attention to the fact that it was indebted to the Pacific Mutual in the sum of $946,436.62 and that Chandler was indebted to petitioner in the sum of $756,653.66 at the time Chandler accepted its assets and assumed its liabilities. This particular liability exceeded this particular asset by $189,782.96 which resulted, asserts the petitioner, in Chandler receiving a minus value and becoming the creditor of petitioner in that amount. If these were the only items transferred, the petitioner's contention might have some merit as there would be no distribution of capital if the liabilities assumed exceeded the assets received. The difficulty with the petitioner's argument is that these were not the only items transferred. In addition to the $756,653.66

1. 26 U.S.C.A. § 718.

2. The record includes a stipulation that Chandler's original investment was only $199,109.78 for which he received the $300,000 par value stock, but for some unexplained reason the petitioner con-

tinues to argue for the larger sum. It is the value of the property paid in for stock which determines the amount of the original invested capital. cf. Douglas Hotel Co. v. Commissioner, 8 Cir., 1951, 190 F.2d 766.

note, the transferred assets included all of the hotel properties, cash, accounts receivable and other assets totaling an amount not only in excess of the liabilities transferred, but also exceeding the combined amount of the liabilities and the shareholder's stock investment. The return to the shareholder of its investment, not being out of accumulated earnings and profits, was a distribution of "equity invested capital" within the purview of section 718.

When capital is distributed to the investor, the investment returns with it and the "equity invested capital" is reduced correspondingly. If this were not so, an investor who controlled a corporation could invest $300,000, procure its *return,* and then reinvest it in the corporation, thus creating "equity invested capital" of $600,000. If that could be done once, it could be done any number of times and the "equity invested capital" pyramided into the millions while the total investment in the corporation at any time would not exceed $300,000. By such manipulation the corporation could build up an excess profits credit which would render it immune from excess profits taxes. Such an absurdity requires no refutation.

Affirmed.